**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **JESSICA AGUILAR and ALMA DELIA LOPEZ, Individually and On Behalf of All Others Similarly Situated,** § § § § | | Civil Action No. 7:18-cv-395-RH |
| **Plaintiffs,** § § | | |
| **v.** § § | | **FLSA - Collective Action** |
| **ONE STOP PERSONNEL SERVICES, LIMITED LIABILITY PARTNERSHIP, and JOE MURCIA,** § § § § | | |
| **Defendants.** § | | **Jury Trial Demanded** |

**PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CLASS CERTIFICATION
AND NOTICE TO POTENTIAL CLASS MEMBERS**

TO THE HONORABLE DISTRICT COURT:

Plaintiffs Jessica Aguilar and Alma Delia Lopez ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Potential Class Members") file this motion for conditional certification of this action as a collective action pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). They respectfully show as follows:

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs, who performed janitorial services for One Stop, initiated this collective action on behalf of themselves and all others similarly situated ("Potential Class Members") for unpaid wages under the Fair Labor Standards Act (the "FLSA") on December 14, 2018. Plaintiffs worked for One Stop performing overnight cleaning of Cinemark Theatres locations in the Rio Grande Valley. They regularly worked 55 to 65 hours or more per week and received a fixed salary that did not vary based on hours worked. One Stop did not pay Plaintiffs even the minimum wage for all hours worked and never paid them overtime pay.

To occlude their violations, One Stop maintained phony records, ensuring that Plaintiffs did not appear in their employment records and ensuring that many of the hours that Plaintiffs worked under pseudonyms assigned by the company were never recorded in their timekeeping system. As set forth below, Plaintiffs are aware that many other One Stop employees were subject to the same unlawful employment practices.

FLSA "collective actions typically proceed in two stages." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n. 2 (5th Cir. 2008). "First, the plaintiff moves for conditional certification of his or her collective action." *Id.* (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995)). "The district court then decides, *usually based on the pleadings and affidavits of the parties*, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action." *Id.* (citing *Mooney*) (emphasis added). "Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly-situated employees who have opted in." *Id.*

In the parties' Joint Rule 26(f) Report and Discovery/Case Management Plan, the parties jointly requested a two-stage case management plan. Plaintiffs requested, as normal, that no discovery be conducted during Phase One, the Notice Phase. However, Defendants requested to conduct discovery "limited to issues relating to the question of class certification during the Notice Phase." (Dkt. 9, at 3.) At One Stop's urging at the scheduling conference, and given One Stop's extraordinary allegation that Plaintiffs never even worked for the company, instead of following the typical two-stage process, this Court granted One Stop the opportunity for early discovery in order to defend against Plaintiffs' Motion for Conditional Certification. (*See* Dkt. 10.)

In discovery, as described in greater detail in Plaintiffs' Motion to Compel Discovery

Responses (filed concurrently with this motion), One Stop has refused to produce most of the documents that would shed light on the disputed facts. One Stop relies on the circular argument that, since they assert that Plaintiffs never worked for the company, Plaintiffs are not entitled to discovery on the questions of whether Plaintiffs worked for them or whether there are similarly-situated individuals. Despite One Stop's noncooperation, the evidence adduced thus far in discovery far surpasses the lenient standard for conditional certification of this action as a collective action such that notice should be given to Potential Class Members of the pending action, with an opportunity to opt in as plaintiffs.

The following exhibits are attached to this motion:

**Exhibit 1:**    Declaration of Named Plaintiff Jessica Aguilar
**Exhibit 2:**    Declaration of Named Plaintiff Alma Delia Lopez
**Exhibit 3:**    Declaration of Opt-In Plaintiff Veronica Gomez
**Exhibit 3-A:** Photo: list of employee names and numeric identifiers used by One Stop
**Exhibit 4:**    Declaration of Opt-In Plaintiff Maria Molina Vela
**Exhibit 5:**    Selected Deposition Testimony of Named Plaintiff Jessica Aguilar
**Exhibit 6:**    Selected Deposition Testimony of Named Plaintiff Alma Delia Lopez
**Exhibit 7:**    Selected Deposition Testimony of One Stop District Manager Olga Barrera
**Exhibit 7-A:** Photos of Plaintiffs and Potential Class Members working for One Stop
**Exhibit 8:**    Selected Deposition Testimony of One Stop corporate designee, Joe Murcia
**Exhibit 9:**    Plaintiff Aguilar's Facebook Messenger messages about work at One Stop
**Exhibit 10:**   Plaintiff Lopez's Facebook Messenger messages about work at One Stop
**Exhibit 11:**   Plaintiff Jessica Aguilar's cell phone location history
**Exhibit 12:**   Call and text message history between Plaintiff Aguilar and One Stop District Manager Olga Barrera
**Exhibit 13:**   Plaintiffs' Proposed Notice and Consent Forms

## II.    ARGUMENT

### A.    Collective actions are favored to further the remedial aims of the FLSA and in the interest of judicial economy.

The FLSA was enacted to serve a broad remedial purpose: "to eliminate low wages and long hours and free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers." *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976) (internal quotation marks and citations omitted).

Collective actions, explicitly authorized under the FLSA, 29 U.S.C. § 216(b), are favored under the law because they enable the "efficient resolution in one proceeding of common issues of law and fact," and provide plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) ("The remedial nature of the FLSA and § 216 militates strongly in favor of allowing cases to proceed collectively" (internal quotation marks and citations omitted)).

Courts are imbued with the authority to manage a collective action, including the power to authorize notice and monitor preparation and distribution of the notice. *Hoffmann-LaRoche*, 493 U.S. at 169-73. Such court management is crucial because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Id.* Court management of the notice process also serves the ends of judicial economy by "serv[ing] the legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite disposition of the action." *Id.* at 172; *see Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628-29 (D. Colo. 2002) (conditional certification would allow "significant economies" to be achieved).[1]

**B.   The standard for conditional certification is a lenient one.**

Certification as a collective action is appropriate where "plaintiffs have provided substantial allegations that potential class members were subject to a single decision, policy, or plan that violated the FLSA." *E.g., Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 515-18 (N.D. Tex.  2014). "The positions need not be identical, but similar." *Barnett v.*

---

[1] Unlike a Rule 23 class action, plaintiffs in an action under the FLSA must affirmatively opt in to be affected by the suit. 29 U.S.C. § 216(b); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001). If an individual employee does not opt in, he or she will not be bound by the outcome, favorable or not, and may bring his or her own private action. *See EEOC v. Pan Am. World Airways, Inc,* 897 F.2d 1499, 1508 n.11 (9th Cir. 1990).

*Countrywide Credit Indus. Inc.*, 2002 WL 1023161, at *1 (N.D. Tex.) (internal citation, quotation marks and brackets omitted); *see also, Pedigo*, 666 F. Supp. 2d at 698 (same). "Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly situated employees who have opted in." *Id.*

In certifying collective actions, federal courts in Texas generally use a two-stage approach—the so-called *Lusardi*[2] test. *See, e.g., Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008) (FLSA "collective actions typically proceed in two stages."); *Graham v. Jet Specialty, Inc.*, No. MO-15-CV-135-DAE, 2016 WL 154846, *2-*3 (W.D. Tex. Jan. 11, 2016) (same); *Jones v. Cretic Energy Services, LLC*, 149 F. Supp. 3d 761, 766-68 (S.D. Tex. Dec. 9, 2015) (same); *Shidler v. Alarm Sec. Group, LLC*, 919 F. Supp. 2d 827, 829 (S.D. Tex. 2012) (J. Alvarez) (same). In the notice stage, the plaintiff moves for conditional certification of his or her collective action." *Sandoz*, 553 F.3d at 916 n.2 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995)). "The district court then decides, *usually based on the pleadings and affidavits of the parties*, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action." *Id.* (citing *Mooney*) (emphasis added). "Because the court has minimal evidence, this determination is made using *a fairly lenient standard, and typically results* in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214 (emphasis added) (internal footnote omitted). "If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'" *Id.* The action proceeds as a representative action throughout discovery." *Id.* "The second determination is typically precipitated by a motion for "decertification" by the

---

[2] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.*

Where the discovery period is ongoing when the plaintiff moves for conditional certification, courts may, in their discretion, adjust the standard based on the amount of discovery conducted and obtained. *See, e.g., Contis v. Digco Util. Constr., L.P.*, 2017 U.S. Dist. LEXIS 130411, at *6-7 (S.D. Tex. Aug. 15, 2017, at *6-*7) ("[t]he leniency of the burden is commensurate with the amount of discovery that has been completed"); *Blake v. Hewlett-Packard Co.*, 2013 U.S. Dist. LEXIS 98690, at *16 (S.D. Tex. July 11, 2013) (applying a "more than minimal evidence" standard where plaintiffs had been afforded "more than minimal discovery"). Nonetheless, "[t]he fact that some discovery has been conducted does not increase the plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010).

### C. Similarly situated workers exist and this Court should certify this case as a collective action.

Despite the fact that One Stop has thus far not produced a single document in discovery related to the issue of conditional certification, Plaintiffs have established through their testimony, through the sworn statements of other similarly situated workers, through One Stop's own admissions, and through additional corroborating evidence that Plaintiffs indeed worked for One Stop and that other individuals exist who were subject to the same unlawful employment practices as Plaintiffs—namely, that One Stop did not pay Plaintiffs and Potential Class Members the minimum wage for all hours worked and never paid them overtime pay, despite their long hours. The evidence far surpasses the lenient standard applicable at this stage of the inquiry, particularly where, as here, crucial evidence is in One Stop's control and One Stop has refused to produce it.

*See, e.g., Straka v. Methodist Dallas Med. Ctr. Auxiliary*, No. 3:16-CV-2192-B, 2018 WL 1611865, at *3 (N.D. Tex. Apr. 3, 2018) (granting conditional certification where, "[a]lthough the parties [had] conducted some discovery," defendant had "withheld information that [plaintiff alleged was] critical to final certification"). The facts and evidence in support of conditional certification are described in this section.

     1.     <u>Plaintiffs' and One Stop's testimony supports conditional certification.</u>

The sworn declarations of Named Plaintiffs Jessica Aguilar and Alma Delia Lopez are attached as Exhibits 1 and 2, respectively. Additionally, One Stop took the depositions of both Aguilar (Exhibit 5) and Lopez (Exhibit 6), and Plaintiffs took the depositions of One Stop District Manager Olga Barrera (Exhibit 7) and corporate designee Joe Murcia (Exhibit 8). These declarations and deposition testimony are summarized as follows.

Plaintiffs and their coworkers provided janitorial services in the Rio Grande Valley in Cameron and Hidalgo Counties, Texas. Plaintiffs and their coworkers are primarily Spanish speaking immigrant workers who were hired by One Stop District Manager Olga Barrera.[3] Barrera was responsible for recruiting and hiring janitorial workers on One Stop's behalf throughout the Rio Grande Valley.[4] Barrera did not collect personal information from the Plaintiffs when she hired them and always paid them in cash.[5] Barrera did not collect personal information from many of Plaintiffs' coworkers, either, and also paid many in cash.[6]

Plaintiffs and their coworkers performed similar duties and worked similar hours.[7]

---

[3] Ex. 1, Dec. J. Aguilar, ¶¶ 3, 12; Ex. 2, Dec. A.D. Lopez, ¶¶ 4, 16; Ex. 5, Depo. J. Aguilar, 18:13-19:1; Ex. 6, Depo. A.D. Lopez, 26:2-10.

[4] Ex. 7, Depo. O. Barrera, 34:6-13, 38:15-39:6, 45:1-6; Ex. 8, Depo. One Stop (J. Murcia), 31:10-32:18.

[5] Ex. 1, Dec. J. Aguilar, ¶¶ 3, 5; Ex. 2, Dec. A.D. Lopez, ¶¶ 4, 6; Ex. 5, Depo. J. Aguilar, 21:21-22:10, 22:24-23:11, 26:1-11; Ex. 6, Depo. A.D. Lopez, 22:22-23:6; 30:17-31:8; 33:7-9, 40:10-25.

[6] Ex. 1, Dec. J. Aguilar, ¶¶ 3, 5; Ex. 2, Dec. A.D. Lopez, ¶¶ 4, 6; Ex. 5, Depo. J. Aguilar, 93:16-22, 94:2-19; 95:3-9; Ex. 6, Depo. A.D. Lopez, 67:18-21, 67:25-68:14.

[7] Ex. 1, Dec. J. Aguilar, ¶ 7; Ex. 2, Dec. A.D. Lopez, ¶ 9; Ex. 5, Depo. J. Aguilar, 21:10-12, 24:21-22, 28:18-29:7; Ex. 6, Depo. A.D. Lopez, 37:1 – 37:6, 40:1-40:5, 66:21-67:1.

Plaintiffs' and their coworkers' duties at the movie theaters consisted of cleaning inside of the movie theater auditoriums and common areas, including vacuuming carpets, sweeping floors, mopping floors, washing windows, picking up trash, cleaning the kitchen, and scrubbing bathrooms.[8] Plaintiffs and their coworkers regularly worked between 55 and 65 hours per week, sometimes more.[9] The workers' hours varied based on how busy the theaters were during the preceding day. During premieres, promotional events, and school vacations (e.g. spring break, winter holidays) the theaters are generally busier and therefore dirtier, requiring extra time to clean.[10] Workers also spent extra time cleaning upon preparation for an audit or inspection.[11] Plaintiffs and their coworkers worked overnight when the theaters were closed to the public, beginning work around midnight and usually ending between about six and nine o'clock in the morning.[12]

One Stop's unlawful practices were the same or similar as to Plaintiffs and their coworkers. First, One Stop never paid Plaintiffs or their coworkers overtime pay when they worked over 40 hours in a workweek.[13] Plaintiffs and their coworkers received fixed semimonthly amounts that did not vary based on the hours worked.[14]

Second, One Stop failed to keep accurate records of Plaintiffs' and their coworkers' hours. Plaintiffs and their coworkers were regularly instructed to clock out (or were clocked out by

---

[8] Ex. 1, Dec. J. Aguilar, ¶ 4; Ex. 2, Dec. A.D. Lopez, ¶ 5; Ex. 5, Depo. J. Aguilar, 14:13-16, 21:2-4, 28:25-29:20, 31:14-23, 61:12-63:15; Ex. 6, Depo. A.D. Lopez, 13:5-6, 30:4-12, 36:1-6, 44:6-11.

[9] Ex. 1, Dec. J. Aguilar, ¶ 7; Ex. 2, Dec. A.D. Lopez, ¶ 9; Ex. 5, Depo. J. Aguilar, 68:6-69:4; Ex. 6, Depo. A.D. Lopez, 78:25-79:2.

[10] Ex. 5, Depo. J. Aguilar, 64:13-65:13, 68:24-69:7; Ex. 6, Depo. A.D. Lopez, 37:19-22, 38:14-16; Ex. 7, Depo. O. Barrera, 86:13-21, 87:4-5; 108:11-16, 110:20-22; Ex. 8, Depo. One Stop (J. Murcia), 70:11-25, 140:11-142:3.

[11] Ex. 5, Depo. J. Aguilar, 60:20-61:23.

[12] Ex. 5, Depo. J. Aguilar, 21:5-7, 27:8-13, 42:19-21, 43:15-17, 60:13-18, 67:17-69:5; Ex. 6, Depo. A.D. Lopez, 36:16-21, 37:19-25, 38:1-22, 39:14-25, 43:13-18 79:6-9.

[13] Ex. 1, Dec. J. Aguilar, ¶ 6; Ex. 2, Dec. A.D. Lopez, ¶ 8.

[14] Ex. 1, Dec. J. Aguilar, ¶ 6; Ex. 2, Dec. A.D. Lopez, ¶ 8; Ex. 5, Depo. J. Aguilar, 23:1-26:5; Ex. 6, Depo. A.D. Lopez, 22:22-23:3, 26:22-25, 40:10-14, 42:9-14.

someone else) hours before they finished working, often as early as 2 or 4 AM.[15] As a result, over half of the hours that they worked were unaccounted for in One Stop's timekeeping system. It also appears that Barrera often assigned aliases for use in the time-keeping and payroll systems that did not match the employees' true names.[16]

Finally, Plaintiffs and Potential Class Members were deprived of even the lawful minimum wage. Their semimonthly salaries did not amount to the minimum wage of $7.25 for all hours worked, instead ranging roughly from $3.55 to $4.19 per hour.[17] In addition to this, One Stop—through Barrera—often made further illegal deductions from Plaintiffs' and some of their coworkers' pay, including a purported "check-cashing fee."[18]

2.    Ample evidence corroborates Plaintiffs' testimony that they worked for One Stop and that other workers are similarly situated.

In addition to their deposition testimony and sworn declarations, Plaintiffs have produced multiple documents that corroborate their claims and starkly contradict One Stop's and Barrera's absolute denials that Plaintiffs ever worked for One Stop.

a.    *Photos of Plaintiffs and Potential Class Members at Work*

Plaintiff Lopez produced several photographs of herself and coworkers at work.[19] One Stop District Manager Olga Barrera was shown three of these photos and testified that she recognized the settings of the photos as Cinemark's Pharr location (photo marked as Depo. Ex. 2) and McAllen 17-Hollywood location (Depo. Ex. 3-4).[20] However, Barrera offered no explanation of why Lopez,

---

[15] Ex. 1, Dec. J. Aguilar, ¶ 8, Ex. 2, Dec. A.D. Lopez, ¶¶ 10-12; Ex. 5, Depo. J. Aguilar, 86:12-87:10, 88:6-9, 132:17-133:5; Ex. 6, Depo. A.D. Lopez, 49:14-23, 50:25-51:1, 51:19-22, 53:1-5.
[16] Ex. 2, Dec. A.D. Lopez, ¶¶ 11-12; Ex. 6, Depo. A.D. Lopez, 50:24-51:3, 54:12-13, 55:2-4, 56:9-57:3, 69:21-25, 93:22-94:8.
[17] *See* Ex. 1, Dec. J. Aguilar, ¶¶ 5-7; Ex. 2, Dec. A.D. Lopez, ¶¶ 6-9.
[18] Ex. 1, Dec. J. Aguilar, ¶ 5; Ex. 2, Dec. A.D. Lopez, ¶ 7; Ex. 5, Depo. J. Aguilar, 25:5-9, 96:21-24; Ex. 6, Depo. A.D. Lopez, 26:22-26:25, 27:20-21, 79:20-23, 97:3-6.
[19] Three of the photographs were marked as Exhibits 2-4 in the deposition of Olga Barrera, and are attached hereto as Exhibit 7-A.
[20] Ex. 7, Depo. O. Barrera, 120:12-126:12.

whom Barrera claimed not to recognize, would be in the theater's bathrooms overnight with people whom Barrera identified as One Stop employees.[21] Similarly, Plaintiff Aguilar produced a photo of a uniform T-shirt that was distributed to employees by Barrera on behalf of One Stop, but Barrera had no explanation of why Aguilar would have the uniform if she never worked for One Stop.[22]

> b. *Communications with Coworkers, Friends, and Family about Work with One Stop*

The Named Plaintiffs have produced numerous messages sent via Facebook Messenger between themselves and their coworkers, friends, and family during their employment and referring to their work at One Stop, attached hereto as Exhibits 9 (Aguilar) and 10 (Lopez).[23] Many of these messages were sent during their One Stop shifts describing their work hours or duties, and they include several more photos taken inside Cinemark theaters serviced by One Stop during the night-shift hours. These messages demonstrate an intimate knowledge of the work the Plaintiffs performed.

Exhibit 9 consists of 230 pages of Plaintiff Aguilar's messages filled with numerous examples of her telling her husband or friends when she is about to leave work at the theater, or what tasks she has left to perform. For example, on August 28, 2016, at 8:41 a.m., Aguilar messages a friend, "I'm just about to leave the theater. I'm just going to give a ride to the ladies

---

[21] *Id.*

[22] Ex. 7-A, photo marked as Depo. Ex. 5; Ex. 7, Depo. O. Barrera, 128:1-129:15.

[23] These messages are in Spanish. Plaintiffs have not obtained certified English translations at this time due to the high cost of translating such a high volume of exhibits and the fact that this evidence is duplicative of the other ample evidence presented here to demonstrate that Plaintiffs indeed worked for One Stop. Additionally, evidence supporting a motion for conditional class certification need not be presented in a form that would be admissible at trial or on summary judgment given the lenient standard at the notice stage and the fact that conditional certification is not a final disposition. *See e.g., Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 761 (N.D. Tex. 2013) (collecting cases); *Pacheco v. Aldeeb*, 5:14-CV-121-DAE, 2015 WL 1509570, at *4 (W.D. Tex. Mar. 31, 2015); *Dooling v. Bank of the West*, No. 4:11-CV-00576, 2012 WL 2417591, at *4 (E.D. Tex. June 26, 2012); *Castillo v. Alkire Subway, LP.*, No. H-08-CV-2658, 2009 WL 9529354, at *4 (S.D. Tex. Apr. 30, 2009); *Lang v. DirecTV, Inc.*, No. 10-1085 "G"(1), 2011 WL 5934607, at *9 (E.D. La. Dec. 30, 2011); *Nguyen v. Versacom, LLC*, No. 3:13-CV-4689-D, 2015 WL 1400564, at *3 (N.D. Tex. Mar. 27, 2015).

whose car didn't start."[24] In another example, on January 2, 2016, Plaintiff Aguilar sends a photo of Cinemark trash cans she emptied, tells her husband that she just vomited while cleaning the employee bathroom where there was a dirty diaper, and comments that men's restroom smells like pure urine.[25]

Exhibit 10 consists of 15 pages of Lopez's messages. These include a comment to a friend that she has no money until she gets paid from her work at the theater,[26] a comment to a coworker saying she asked Olga Barrera when they would be paid,[27] and a conversation with her coworkers discussing memories of working for One Stop and sharing photos of themselves at work.[28]

### c.   *Cell Phone Location History*

Plaintiff Jessica Aguilar has produced data showing her cell phone's location history, tracked through Google and Android cell phone software. This data was harvested from Plaintiff's Google account associated with her cell phone, and the spreadsheet attached as Exhibit 11 provides a breakdown by date and time of each entry and exit from Cinemark's Pharr theater.[29] The data shows that Aguilar indeed was present at the Cinemark Pharr theater consistently during the times of the overnight shift and during the dates she alleges. Exhibit 11 shows Aguilar entering the Cinemark Pharr theater around midnight most nights between December 7, 2015 and

---

[24] Bates No. P000059.
[25] Bates Nos. P000075-78.
[26] Bates No. P000201.
[27] Bates No. P000202.
[28] Bates Nos. P000208-10.
[29] Plaintiffs' counsel downloaded Aguilar's location history using Location History Analyzer, an open-source software tool available at https://clsphila.github.io/whats-my-schedule/index.html. As explained on its website "[t]his tool uses the data generated by an Android phone (and select iPhones that are tracking data to Google) to allow workers and their advocates to create an excel editable timesheet for a worker's work for a particular employer. . . . The tool takes as input a Google location history file (in geo-json format). . . . It quickly analyzes the file and plots the individual's location history on a map. The worker or advocate can then draw a bounding box around each work location during the relevant time period. The tool then analyzes the map and boxes and creates a spreadsheet that is, in essence, a time log for that worker at the boxed locations."

September 30, 2016 and exiting usually between about 6 a.m. and 9 a.m., although sometimes much later.[30] Her total weekly hours usually range between about 48 and 68, with an average of 54.93 hours per week.[31]

> d.     Call and Text Message History with One Stop District Manager
>        Olga Barrera

Plaintiff Aguilar also a produced a log of telephone calls and text messages exchanged between her phone number and the phone number used by Barrera on her mobile phone provided by One Stop, attached as Exhibit 12. This log, obtained by subpoenaing Plaintiff Aguilar's carrier, shows that Aguilar and Barrera communicated regularly—65 calls and 7 text messages— throughout the period of Aguilar's employment—December 7, 2015 to September 30, 2016.[32]

Barrera admits that she knows and communicated with Aguilar, but alleges that all communications would have been about Aguilar's husband mowing Barrera's grass and one occasion when Barrera invited Aguilar to her granddaughter's birthday party.[33] Aguilar agrees that she communicated with Barrera about those topics, in addition to work-related communications, and the call and text message history indeed indicate several calls and text messages before and after Aguilar's dates of employment. However, many, if not most, of the calls and text messages during Aguilar's employment dates were made during the hours of her overnight shift, while

---

[30] Because the Location History Analyzer tool captures times that the subject device was present within a specified geographic grid that exceeds the bounds of the precise location in question, it captures a number of entries beyond Aguilar's work hours. These instances are distinguishable as they have far shorter durations and fall outside Aguilar's work schedule.

[31] This figure was calculated from the column titled "Total time for week (hrs)" in Exhibit 11 for the period of December 13, 2015 to September 3, 2016. The first week and last few weeks were not included because the location history data does not show Aguilar working her normal schedule. Aguilar worked her normal schedule through September 30, 2016, but Google's location history system did not indicate her presence there during all of that time—whether due to a technical failure, the cell phone's location feature being disabled at times, Aguilar not having the phone at work, or other reasons. This demonstrates that, while the location history data does indicate that Aguilar was regularly present at the Cinemark theater during the overnight hours she alleges, it under-reports her total work hours.

[32] Calls are listed on Bates Nos. P000010-19 of Ex. 12. Text messages are listed on Bates Nos. P000020-22.

[33] Ex. 7, Depo. O. Barrera, 118:16-119:19, 131:7-133:11, 140:21-142:21.

almost all of the calls and text messages before and after her employment were made outside of those night-shift hours.[34]

### 3. Similarly situated individuals have opted into this lawsuit and attest to the same unlawful practices.

Two similarly situated individuals have already opted into this lawsuit and substantiate One Stop's unlawful practices. On July 1, 2019, Veronica Gomez filed her consent to join this lawsuit. (Dkt. 17.) On July 22, 2019, Maria Molina Vela also filed her consent to join this lawsuit. (Dkt. 19.) Both Gomez and Molina are similarly situated individuals who were subjected to the same unlawful pay practices as Plaintiffs. Like Plaintiffs, Gomez and Molina were hired by One Stop District Manager Olga Barrera.[35] Like Plaintiffs, Barrera did not collect Gomez's personal information when she hired her, and Barrera used aliases for both Gomez and Molina.[36] As with Plaintiffs, Barrera paid Gomez only in cash.[37] Barrera paid Molina by cash and check.[38]

Gomez and Molina were also similarly situated to Plaintiffs with respect to their job duties and work hours. Like Plaintiffs, Gomez and Molina performed janitorial duties for One Stop in Cinemark theaters in Hidalgo and Cameron Counties consisting of cleaning the auditoriums and common areas, including tasks such as cleaning trashcans, bathrooms, and carpeting and walls of the theater hallways.[39] Like Plaintiffs, Gomez and Molina regularly worked more than 55 hours per week.[40]

Gomez and Molina suffered the same unlawful pay practices as Plaintiffs at the hands of

---

[34] As explained in the AT&T Records Key on Bates No. P000001, the call connection time is listed in UTC. UTC stands for Universal Coordinate Time, previously known as Greenwich Mean Time, and also known as Zulu time. *See* https://www.nhc.noaa.gov/aboututc.shtml. UTC runs six hours ahead of Central Standard Time (CST) and five hours ahead of Central Daylight Time (CDT).
[35] Ex. 3, Dec. Gomez, ¶ 3; Ex. 4, Dec. Molina, ¶ 4.
[36] Ex. 3, Dec. Gomez, ¶¶ 3, 8; Ex. 4, Dec. Molina, ¶¶ 4, 8.
[37] Ex. 3, Dec. Gomez, ¶ 5.
[38] Ex. 4, Dec. Molina, ¶ 6.
[39] Ex. 3, Dec. Gomez, ¶ 4; Ex. 4, Dec. Molina, ¶ 5.
[40] Ex. 3, Dec. Gomez, ¶ 7; Ex. 4, Dec. Molina, ¶ 13.

One Stop. As they did with the Plaintiffs, One Stop ensured that over half of Gomez's and Molina's working hours were not recorded in their timekeeping system by instructing them to clock out— or instructing someone else to clock them out—hours before they finished working.[41] Gomez states that Barrera usually assigned a coworker named Anselma Bautista to clock Gomez and other employees in and out using One Stop's telephonic timekeeping system.[42] Gomez provided a photo of a list of names and numeric identifiers written on a wall in the closet where One Stop's timekeeping phone was located.[43] Gomez believes that she was assigned the alias "Guadalupe," which appears in the photo, because she once received her pay in an envelope marked "Guadalupe."[44] One Stop did not pay Gomez or Molina overtime pay for their long hours, and, as they did with Plaintiffs, One Stop paid them only a fixed, semimonthly salary.[45]

Molina received slightly more than her $500 salary on some occasions, generally ranging between $500 and $510.[46] On one pay period, when she accidentally clocked out one day at the time she actually finished her shift instead of the artificially earlier time she was instructed to clock out, she received $542.[47] One Stop representative Joe Murcia testified that employees are paid "not really a salary. Well, we call it a guaranteed minimum."[48] Murcia testified that "it covers the employee up to 40 hours and -- you know, at minimum of -- at the federal minimum wage. In most cases, more than that. Any hour above hours is considered overtime pay, and so we pay for that accordingly."[49] Apparently, One Stop usually prevented employees from exceeding their salary, or "guaranteed minimum," by requiring them, or another designated employee, to clock them out

---

[41] Ex. 3, Dec. Gomez, ¶ 8; Ex. 4, Dec. Molina, ¶¶ 11, 14-16.
[42] Ex. 3, Dec. Gomez, ¶ 8.
[43] *Id.*; Ex. 3-A, photo.
[44] *Id.*
[45] Ex. 3, Dec. Gomez, ¶¶ 5-6; Ex. 4, Dec. Molina, ¶¶ 10-12.
[46] Ex. 4, Dec. Molina, ¶¶ 10-11.
[47] *Id.* at ¶ 11.
[48] Ex. 8, Depo. One Stop (J. Murcia), 71:6-7.
[49] *Id.* at 53:17-21.

before they finished working each day, but indeed paid a little more on rare occasions when employees logged more hours in the timekeeping system.

Finally, like Plaintiffs, Gomez and Molina were deprived of the lawful minimum wage by One Stop. Gomez and Molina's salaries, like Plaintiffs', did not amount to the minimum wage of $7.25 for the hours they worked, but rather ranged between roughly $3.55 to $4.19 per hour.[50] As she did to Plaintiffs, Barrera often made further deductions from Gomez's and Molina's pay, including a $5-$20 deduction from pay, which Barrera said was a check cashing fee, and requiring the purchase of certain supplies or equipment without reimbursement.[51]

The declarations of these workers demonstrate that there exist other similarly situated workers who would opt into this lawsuit if given proper notice. That opportunity should be afforded to all Potential Class Members as authorized by the FLSA.

4.     The U.S. Department of Labor, Wage and Hour Division determined that a class of individuals exists that was subject to the same unlawful practices described by Plaintiffs.

As confirmed by One Stop Chief Operations Officer Joe Murcia during his deposition on behalf of One Stop, The U.S. Department of Labor, Wage and Hour Division in McAllen, Texas investigated One Stop for violations of the FLSA—the same violations raised by Plaintiffs in the Complaint in this action and described above.[52] The Department of Labor issued a report stating that the investigator interviewed 26 individuals who had worked for One Stop in the Rio Grande Valley and visited Cinemark Theatres locations where One Stop employees worked in the early morning to determine the time that One Stop employees left work.[53]

Upon conclusion of its investigation, the Department of Labor determined that, just as

---

[50] *See* Ex. 3, Dec. Gomez, ¶¶ 5-7; Ex. 4, Dec. Molina, ¶¶ 6, 10-13.
[51] Ex. 3, Dec. Gomez, ¶ 9; Ex. 4, Dec. Molina, ¶ 9.
[52] Ex. 8, Depo. One Stop (J. Murcia), 117:19-25.
[53] Ex. 8, Depo. One Stop (J. Murcia), 118:13-23, 120:7-12, 125:20-126:10.

described by Plaintiffs, One Stop—through Barrera—paid its janitorial workers in cash, did not collect identity documents from its janitorial workers, and did not record all of its janitorial workers' hours.[54] The Department of Labor further determined that One Stop's time records were inaccurate in that they did not reflect all of the hours worked by its janitorial workers in the Rio Grande Valley, and that the workers were not paid even the minimum wage for all hours worked.[55] The Department of Labor found that One Stop owed 18 workers a total of $240,379.38 in back wages,[56] but One Stop refused to make payment.[57]

The conclusion of the Department of Labor after its extensive investigation, including 26 witness interviews, lend further support to the Plaintiffs' allegations that a class of similarly situated workers exists.

### D.   The Court should authorize notice to Potential Class Members via all reasonable methods designed to meet the extraordinary circumstances and challenges in this case.

Notice in a conditional certification case "depend[s] on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. 165, 172 (1989). District courts in collective actions have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche*, 493 U.S. at 170-71. The "prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). The district court's duty is to ensure "the best notice practicable under the

---

[54] Ex. 8, Depo. One Stop (J. Murcia), 120:15-121:19.
[55] *See* Ex. 8, Depo. One Stop (J. Murcia), 120:3-6.
[56] Ex. 8, Depo. One Stop (J. Murcia), 119:23 – 120:6.
[57] Ex. 8, Depo. One Stop (J. Murcia), 125:11-17.

circumstances." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 n.2 (9th Cir. 1990).

        1.     <u>This case presents unique challenges to locating the Potential Class Members and effectively disseminating notice to them.</u>

As set forth in Sections C(1)-(2) above, the Named and Opt-In Plaintiffs have testified that One Stop did not keep accurate records of the Plaintiffs' or Class Members' true names or contact information—testimony that is corroborated by the Department of Labor's findings . One Stop entrusted its hiring to District Manager Olga Barrera, and Barrera generally did not provide employees' true names or contact information to One Stop management or human resources. Furthermore, Plaintiff Alma Delia Lopez and Potential Class Members have testified that Barrera assigned aliases to them and other employees. Therefore, it is unlikely that One Stop's formal payroll records will accurately identify the Potential Class Members or their contact information.

Granted, One Stop denies all of these allegations. However, in the face of the mounting evidence cited in Section C above, and given One Stop's refusal to respond to discovery aimed at resolving this stark, fundamental factual dispute, Plaintiffs and Potential Class Members are entitled at this stage of the proceedings to have notice issued to similarly situated employees by the most effective means available.

Additionally, the Potential Class Members in this case are mostly non-English-speaking immigrant workers who earn low wages and frequently move and change phone numbers. *See, e.g., Montelongo v. Meese,* 803 F.2d 1341 (5th Cir. 1986) (approving multiple methods of disseminating notice due to the mobile, semi-literate character of a class of immigrant workers).

Therefore, Plaintiffs request to employ a set of complementary methods designed to achieve a more effective distribution of the notice than would be possible through only one or a few traditional channels.

2.      Plaintiffs' request multiple methods of disseminating notice that are tailored to the needs of this matter.

Plaintiffs request notice via mail, email, Facebook and Facebook Messenger, text message and/or WhatsApp, a posting in "La Pulga Online Del Valle" Facebook group, monitored distribution with pay, and posting in the workplace in an area readily and routinely available for review by the Potential Class Members. All of these methods have routinely been authorized in class and collective actions, as discussed below.

Courts routinely authorize notice by email in addition to mail. "Utilizing two means of delivery—first-class mail and email—is more likely to result in potential plaintiffs receiving notice of the lawsuit than by a single delivery method." *Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 U.S. Dist. LEXIS 75624, at *22 (S.D. Tex. 2018) (Edison, J.)[58] Likewise, with the prevalence of social media, courts regularly allow notice via Facebook and other social media sites. "As expected, courts across the country are adapting with the times, taking steps to maximize the effectiveness of class notice through the use of social media." *Wade*, 2018 U.S. Dist. LEXIS 75624, at *23-24.[59] In light of the proliferation of electronic notice procedures, courts further regularly allow execution of notice forms by potential opt-in plaintiffs using a secure E-signature

---

[58] *See also, e.g., Lemmers v. Gary Pools, Inc.*, SA-15-CA-00828-OLG, 2016 WL 7508075 (W.D. Tex. May 24 2016) (Garcia, J.) ("[E]mail is a traditional and commonly used method to provide notice of class actions."); *Burns v. Chesapeake Energy, Inc.*, SA-15-CV-1016-RP, 2017 WL 1842937, at *9 (W.D. Tex. Mar. 14, 2017) ("Nor is there a valid reason why the parties should not agree to e-mail notice in the year 2017"); *Beall v. Tyler Technologies, Inc.*, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (Ward, J.) (court granted class notice via email and later compelled the employer to produce all email addresses, both personal and work).

[59] *Granados Joaquin v. Hinojosa*, 219 F. Supp. 3d 582 at 584-85 (W.D. Tex. 2016) (approving notice by first-class mail, email, Facebook message, and posting in defendants' establishments); *Pacheco v. Aldeeb*, 5:14-CV-121-DAE, 2015 WL 1509570, at *8 (W.D. Tex. Mar. 31, 2015) (same); *Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2017 U.S. Dist. LEXIS 205079, 2017 WL 4418684, at *6 (D. Colo. Apr. 28, 2017) ("The Court agrees that electronic notice through social media platforms is particularly appropriate for classes comprised of largely young, largely transient unnamed plaintiffs, because email addresses and physical addresses may not provide a reliable, durable form of contact.") (internal quotations, ellipses, and citation omitted); *Woods v. Vector Mktg. Corp.*, C-14-0264 EMC, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) (finding Facebook "a particularly useful form of ensuring actual notice"); *Mark v. Gawker Media LLC*, 13-CV-4347 AJN, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014) (approving notice via social media sites, including Facebook, LinkedIn, and Twitter).

program, such as DocuSign.[60]

Additionally, Plaintiffs request that notice be sent via text message and/or the messaging and VOIP service WhatsApp, in the form of a brief summary and link to a webpage that will contain only the Notice and Consent Forms attached hereto as Exhibit 13. Courts have approved such means under similar circumstances. As Judge Edison noted in *Wade v. Furmanite Am., Inc.*,

> [N]obody should be surprised if, in the very near future, even email is ineffective in reaching potential class members. . . 'Teens barely use [email] (or Facebook for that matter), opting instead for text messaging and chatting on platforms like Snapchat and Instagram. Three-quarters of teens regularly text one another, according to a 2012 Pew study, while just 6 percent of them exchange emails routinely."

2018 U.S. Dist. LEXIS 75624, at *22-23 (quoting Adrienne Lafrance, *The Triumph of Email: Why Does One of the World's Most Reviled Technologies Keep Winning?*, The Atlantic (Jan. 6, 2016)). In this era, it is evident that "email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that using email and texts to notify potential class members is entirely appropriate." *Vega v. Point Sec., LLC*, No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105, at *12 (W.D. Tex. 2017) (making a recommendation, subsequently adopted by the district court, that plaintiff's counsel "send a text message to the Class Members with a link to the Notice of Rights and Consent Form"). Other district courts in the Fifth Circuit have also permitted text message notice.[61]

---

[60] *E.g., Wade*, 2018 WL 2088011 at *24 ("recent technological advances . . . have made electronic signatures trustworthy, valid, and enforceable. As such, courts routinely permit opt-in members in FLSA collective actions to execute their consent by means of electronic signature.").

[61] *See Dearmond v. Alliance Energy Servs., L.L.C.*, No. 17-2222, 2017 WL 3173553, at * 3 (E.D. La. July 25, 2017) (ordering text message notice); *Escobar v. Ramelli Group, L.L.C.*, No. 16- 15848, 2017 WL 3024741, at *3 (E.D. La. July 7, 2017) ("Courts have approved of the use of text messages because it facilitates notice to class members who may have changed addresses before the opt-in period" (citing *Mahrous v. LKM Enterprises, L.L.C.*, No. 16-10141, 2017 WL 2730886 at *4 (E.D. La. June 26, 2017))); *but see Aguirre v. Tastee Kreme #2, Inc.*, No. H-16-2611, 2017 WL 2999271, at *9-10 (S.D. Tex. April 13, 2017) (Johnson, M.J.) (denying requested text notice because it did not provide a full picture of the nature of the lawsuit, the class members' rights, and the seriousness of the communication; and it might therefore be misleading). Plaintiffs' proposal for sending notice via text and/or WhatsApp in the form of a brief summary and link to a webpage that will contain only the Notice and Consent Forms attached hereto as Exhibit A addresses Judge Johnson's concerns as the message will merely direct potential class members via hyperlink to the full Court-approved notice, eliminating potential confusion.

Plaintiffs request that they be authorized to post notice in English and Spanish in a Facebook group called "La Pulga Online Del Valle." Plaintiff Jessica Aguilar testified that she contacted a prospective One Stop employee through this Facebook group to share details about the job with him.[62] Plaintiffs believe that a posting in this group may reach former employees who are unlikely to be contactable by mail or even identified as Potential Class Members to begin with, due to One Stop's failure to maintain accurate employment records.

Courts also regularly order defendants to post notice of collective actions in the workplace.[63] Another similar and efficient method of distributing notice is by delivering a copy together with current employees' regular pay.[64] Plaintiffs' Counsel is requesting a monitored distribution of notice because of the well-demonstrated concerns for the likelihood of Barrera engaging in retaliatory behavior or otherwise attempting to obstruct such distribution of notice. For example, Opt-In Plaintiff Maria Molina Vela states that:

> Many of the One Stop employees I met are afraid of Olga Barrera Garcia because of threats she has made to various employees. Olga Barrera Garcia once told me that she intended to report three One Stop janitorial employees to immigration authorities for making a complaint. Other employees have told me that they have heard similar threats from Olga, and I believe many employees are frightened by

---

[62] (Aguilar Dep. 53:1-8.)

[63] *E.g., Aguirre v. Tastee Kreme #2*, No. H-16-2611, 2017 U.S. Dist. LEXIS 83327, at *25 (S.D. Tex. 2017) (Miller, J.); *Granados Joaquin*, 219 F. Supp. 3d at 587; *Pacheco*, 2015 WL 1509570, at *8; *Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. Feb. 8, 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (*citing Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009) (requiring defendant to "post the notice in each workplace where potential collective action members are employed" within ten business days of date of decision); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("while defendants object to the posting of the Notice at their business locations—and request an order prohibiting it—such a practice has been routinely approved in other cases"); *see also, Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. April 19, 2006) (ordering notice to be posted at each of defendant's business locations, noting that defendant would face "only a small burden in being required to post the notice," and that "multiple district courts have approved this method of notice"); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex.1982) (approving notice by direct mail, posting notice on company bulletin boards, and publishing the notice in a company magazine).

[64] *E.g., Granados Joaquin*, 219 F. Supp. 3d at 587 (authorizing paycheck notice); *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 437 (S.D. Ill. 2012); *Ritzer v. UBS Fin. Servs., Inc.*, 2008 WL 4372784, at *5 (D.N.J. Sept. 22, 2008).

the possibility of Olga retaliating against them for enforcing their rights.[65]

Plaintiff Lopez testified that Olga instructed her (by conveying a message through another employee) that when One Stop Operations Manager Joe Murcia came to visit and called out employee names, Lopez was to raise her hand in response to the alias Jessica.[66] Additionally, Barrera testified that a Department of Labor investigator told her that the investigator believed that Barrera had warned employees to leave work to hide from the investigator.[67] This is all in addition to the Plaintiffs' testimony, corroborated by the Department of Labor findings, that Barrera facilitated One Stop's wage violations in the first place by assigning employees aliases and requiring them to work off the clock.

Therefore, Plaintiff's Counsel requests that this Court order that counsel for each of the parties, or their employees or agents, be afforded the opportunity to be present for the distribution of notice, taking place at date(s) and time(s) in which pay is distributed. The Fifth Circuit has, in addition to approving notice by mail and radio announcements, authorized direct, personal contacts due to the mobile, semi-literate character of a class. *See Montelongo v. Meese,* 803 F.2d 1341 (5th Cir. 1986). Other courts as well have allowed direct contact by plaintiffs' counsel with class members, recognizing the need to adapt their notice procedures for classes of low-wage, immigrant workers.[68] The court in *Riojas v. Seal Produce, Inc.*, approved consents obtained through direct contact by legal aid attorneys. 82 F.R.D. 613, 619 (S.D. Tex. 1979). In addition to the low-wage, immigrant worker characteristics of the class, Defendant's recalcitrant behavior, particularly that of Barrera, necessitates such direct contact.

---

[65] Ex. 4, Dec. Molina, ¶ 20.
[66] Ex. 6, Depo. Lopez, 72:6-14, 94:1-15.
[67] Ex. 7, Depo. Barrera, 149:17-152:2.
[68] *E.g.*, *Neizil v. Williams,* 1983 WL 1983 (M.D. Fla. 1983) (approving consents obtained through direct contacts as "the most efficient means of rendering free legal assistance to indigents in an FLSA action"); *Aguirre v. Bustos,* 89 F.R.D. 645, 649 (D. N.M. 1981) (approving Rule 23 notice to class of migrant workers through mail and "personal contact").

**III.     CONCLUSION**

Plaintiffs respectfully request that the Court conditionally certify a class defined as:

All individuals who worked for One Stop Personnel Services, Limited Liability Partnership cleaning Cinemark Theatres locations in Cameron and Hidalgo Counties at any time beginning three years before the date conditional class certification is granted.

Plaintiffs request that this Court order One Stop to provide Plaintiffs' Counsel with the following information within 14 days of the order granting this Motion:

1.      An electronic list in Microsoft Excel format with each Potential Class Member's name, address, phone number, email address (if known), starting date, and ending date of employment designated as separate fields;

2.      A copy of the list of individuals identified to One Stop's management by the Department of Labor-Wage Hour Division, whom the DOL determined were employees of One Stop or were owed back wages as a result of its investigation of One Stop's operations in Hidalgo and Cameron Counties.[69]

Plaintiffs further request the court to authorize the Notice and Consent forms attached hereto as Exhibit 13 to be disseminated in both English and Spanish to the individuals identified by Defendants and by the means set forth above. Plaintiffs request a 90-day opt-in period measured from the date Defendants provide the information specified above.

Respectfully submitted,

EQUAL JUSTICE CENTER

By:  /s/ Colleen Mulholland
Colleen Mulholland
Texas Bar No. 24091765
8301 Broadway Street, Ste. 309
San Antonio, Texas 78209
Tel (210) 308-6222, ext. 101
Fax (210) 308-6223
cmulholland@equaljusticecenter.org

Aaron Johnson
Texas Bar No. 24056961

---

[69] Ex. 8, Depo. One Stop (J. Murcia) 128:10-14.

Admitted Pro Hac Vice
510 S. Congress Ave., Ste. 206
Austin, Texas 78704
Tel (512) 474-0007, ext. 104
Fax (512) 474-0008
ajohnson@equaljusticecenter.org
Shana Khader
Texas Bar No. 24099860
1250 W. Mockingbird Lane, Ste. 455
Dallas, TX 75247
Tel (469) 228-4226
Fax (469) 941-0861
skhader@equaljusticecenter.org

COUNSEL FOR PLAINTIFFS


## CERTIFICATE OF CONFERENCE

I hereby certify that on July 19, 2019, the undersigned conferred with counsel for Defendant regarding the relief requested in this motion and that counsel indicated Defendant is opposed to this motion.

/s/ Colleen Mulholland
Colleen Mulholland


## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019 a copy of the foregoing document was electronically filed. Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

/s/ Colleen Mulholland
Colleen Mulholland